The **ATLANTIC REFINING COMPANY,**
Owner of the Tankship Atlantic
Trader, Appellee,

v.

**MATSON NAVIGATION COMPANY,**
Owner of the Steamship Hawaiian
Retailer, Appellant.

No. 12340.

United States Court of Appeals
Third Circuit.

Argued Feb. 3, 1958.

Decided April 3, 1958.

MacDonald Deming, New York City (Springer H. Moore, Jr., Krusen, Evans & Shaw, Philadelphia, Pa., Richard G. Ashworth, Haight, Gardner, Poor & Havens, New York City, on the brief), for appellant.

Thomas F. Mount, Philadelphia, Pa. (Rawle & Henderson, Harrison G. Kildare, Philadelphia, Pa., on the brief), for appellee.

Before GOODRICH, McLAUGHLIN and HASTIE, Circuit Judges.

McLAUGHLIN, Circuit Judge.

In this admiralty case the facts are stipulated. They show that the tanker Atlantic Trader, on December 16, 1950, proceeding in the Delaware River fouled her propeller and tailshaft on a buoy chain. A survey determined she had not been rendered unseaworthy and the repairs were deferred until her next drydocking. On January 29, 1951, she suffered bottom damage arising out of a grounding as the result of appellant's

s/s Hawaiian Retailer overtaking her. After discharging her cargo the Atlantic Trader proceeded to the drydock where she arrived February 6, 1951, for the repairing of the bottom damage, the damages caused by the buoy, and for maintenance repairs, general overhaul and annual hull, boiler and machinery classification surveys which had been scheduled for March 14, 1951. All the work was performed concurrently without mutual interference and completed at the same time.

There was a consent decree awarding the appellee 75% of its provable damages. The parties had agreed on the cost of the grounding damage repairs and that appellant should pay 75% thereof. The admitted drydocking expense amounted to $18,459.07 which the Commissioner concluded should be borne by libelant. The district judge, sustaining the exception to that part of the Commissioner's report, held that the drydocking cost should be included in the Atlantic Trader's grounding damages.

The one appeal issue is whether, under the circumstances, appellee is entitled to its drydock expense from appellant. The latter argues that, though the repair of the tort damage was immediately necessary, Atlantic Refining cannot charge it for time and costs which had to be incurred in any event and therefore were not proximately caused by the grounding.

Appellant complains that although the Atlantic Trader was forced into drydock by the grounding damage, once there it had other repairs and routine overhauling attended to at the same time. It admits these caused no interference to the tort job and that there was no extra cost to it. Nevertheless, it, in effect, contends appellee should have held off the other work until after the tanker's hull had been fixed. That this would have meant completely unnecessary extra expense and further loss of time to the Atlantic Trader is not commented upon by appellant who flatly claims appellee is receiving an unjustified windfall. We cannot accept this.

Appellee's ship had been rendered unseaworthy through the major fault of appellant. The bottom condition could not be remedied without drydocking. The tanker discharged her cargo at Philadelphia at once, completing the task the next day, January 30, 1951 and then sailing for the drydock. While the ship was laid up for the tort repairs appellee had her seasonal checkup and other damage taken care of. There was no rush about these latter. As events turned out she went off drydock February 14, 1951 and left the shipyard the following day. This was a month prior to the date on which she had been expected to go in for her survey and forty-three days after the accident. We see no reason for penalizing appellee because of the common sense practice it followed.

The proximate cause of the forced docking was the tort. The tanker was seaworthy otherwise. It had a March overhauling scheduled which was not mandatory and probably could have been postponed. Appellant urges that The Pocahontas, 2 Cir., 1940, 109 F.2d 929, supports its position. We disagree. The governing law set out in that case relevant to the situation at bar is *restitutio in integrum* which, under the present facts, includes the cost of necessary repairs. The court said on the particular point at page 931:

"If the collision damage is serious enough to necessitate an immediate lay-up for repairs, the owner may charge the tort-feasor with what the vessel would actually have earned during the detention period; and there will be no abatement of the amount because the owner chooses the occasion to accelerate his annual overhaul or to repair damage for owner's account of a character not necessitating an immediate lay-up and not extending the detention period beyond the time required for collision repairs."

Certainly if there is no abatement of earnings under the above Pocahontas doctrine which states an issue identical with the one before us, there should

be no abatement of the expense of restoring the ship to seaworthy condition. From the stipulated facts, appellee's action in seeing to it that the survey and the other repairs were disposed of during the Atlantic Trader's lay up was in strict accord with Pocahontas. It in nowise conflicted with the proposition that even a tortfeasor is entitled to the benefit of the principle of avoidable damages. In the earlier Second Circuit decision of Clyde S. S. Co. v. City of New York, 1927, 20 F.2d 381, the damaged vessel was operated for seven months before being drydocked. Nor does Moore-McCormack, Lines Inc., v. The Esso Camden, 2 Cir., 1957, 244 F.2d 198, lend any real substance to appellant's contention. The phase of it in which we are interested was a minor element of that suit and dealt with briefly. However, it is very clear from the Esso Camden opinion that the damaged vessel was in drydock seventeen days and that there was a commitment regarding it of two days drydock for general repairs. In other words there was a distinct separation of the total drydock time with the tort repairs covering fifteen days out of the total. We are confronted with no such cleavage problem. Concededly appellant has been charged for the use of the dock only while Atlantic Trader's damage for which it was responsible was being worked on. The circumstance that simultaneously appellee was able to attend to the ship's checkup and other repairs was merely a fortuitous event legitimately taken advantage of by appellee. Our own examination has not revealed, nor have we been referred to, any decision denying drydock cost under facts as here shown.

The decree of the district court will be affirmed.

HASTIE, Circuit Judge (concurring).

Joining in affirmance of the judgment below, I find it harder to decide this case than do my colleagues. In the view of my colleagues it is clear that the appellant's maritime tort was "the proximate cause" of the drydocking of the Atlantic Trader, while the ship's earlier accidental fouling of its propeller and tailshaft was not a responsible cause of this expensive operation.

The appellee here had already committed itself, before appellant's negligence intervened, to incur the cost of drydocking the Atlantic Trader for several days in March. Appellant's negligence merely made it necessary for appellee to incur such drydocking expense for the same number of days in early February. The actual cost of drydocking, which is now in controversy, would have been the same at either time. In these circumstances, it is arguable that the subsequent wrong, which caused only a rescheduling of the drydocking without adding any extra days or costs of detention beyond what the earlier injury alone would have required, was not even a "but for cause" of the drydocking expense.

In his thoughtful essay, Multiple Causation and Damage, 1934, 47 Harv.L.Rev. 1127, 1130, Chief Justice Peaslee made this rather persuasive rationalization of such situations:

"  *  *  * On the one hand is sufficient wrongful causation of a physical result, and on the other, inevitable loss not increased by the defendant's wrong. Recovery would make the plaintiff better off than he would have been if the defendant had done no wrong. So long as the innocent cause is in actual, inescapable operation before the wrongful act becomes efficient, it is not apparent how the latter can be considered the cause of the loss. Causation is matter of fact, and that which is not in fact causal ought not to be deemed so in law. The defendant's act may have furnished some cause for the  *  *  * [loss], but causing  *  *  * [it] at that time and under those circumstances did not injure the plaintiff, and neither moral justification nor logic would charge the wrongdoer for damage which he had not caused."

This line of thinking apparently has persuaded the British courts that a tortfeasor should not be charged with the damage in question in a case like this. Thus, Lord Phillimore, summing up his prevailing view in the House of Lords, said:

"If a vessel has got to go into drydock for a periodical survey * * * or to repair previous damage, her detention for repairs due to some collision which occurs after the previous damage or after the determination to put her into drydock has been made, will not be a charge against the wrongdoer; otherwise it will." Commissioners v. Owners of S. S. Chekiang, [1926] A.C. 637, 653. Cf. Carslogie S. S. Co. v. Royal Norwegian Government, [1952] A.C. 292 (H.L.)

These arguments give me concern, yet I doubt whether there is any clearly correct solution of these odd multiple cause cases. In dealing with them there seems to be merit to a different approach suggested by the Restatement of the Law of Torts. The Restatement first states in Section 431 that "the actor's negligent conduct is a legal cause of harm to another if (a) his conduct is a substantial factor in bringing about the harm * * *." Then Section 432 (2) sets out one exceptional situation in which negligent conduct which is not a necessary antecedent of the harm may still be a substantial factor in bringing it about. That is the peculiar case in which "two forces are actively operating, one because of the actor's negligence, the other not because of any misconduct on his part, and each of itself is sufficient to bring about [the] harm [which is suffered] * * *." The Restatement rule may well have been designed to deal with problems somewhat different from the one we have here. Yet, it makes sense here and I would apply it. The appellant's tort made drydocking essential as soon as possible and in fact caused a rescheduling of the drydocking a month earlier than had originally been arranged. Therefore, it was permissible for the court below to find that the appellant should in fairness bear the drydocking cost, since its negligence would have been sufficient in itself to necessitate drydocking and, in fact, did operate simultaneously with another factor in bringing about that eventuality.